**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANIEL GAFFNEY,**

                                        **Petitioner,**

            **- v -**                                                **9:08-CV-0302 (LEK)**

**JAMES CONWAY, Superintendent,**

                                        **Respondent.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PETITIONER:**

**DANIEL GAFFNEY**
03-B-2977
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**         **PRISCILLA I. STEWARD, ESQ.**
Attorney General for the                Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**LAWRENCE E. KAHN**
U.S. DISTRICT JUDGE

## MEMORANDUM-DECISION AND ORDER

**I.    Background**

    **A.    History**

    According to the testimony adduced at trial, on March 15, 2003, Steven S. ("Steven") took

his family, including his 10-year-old daughter, M.S., to a St. Patrick's Day parade in Syracuse,

New York.  See Tr. Tran. at 335.[1]  Petitioner *pro se* Daniel Gaffney ("Petitioner" or "Gafney") a

friend of Steven, accompanied he and his family to the parade.  Id. at 335.  At some point during

the parade, Gaffney escorted Steven's son to the bathroom, and when he returned, M.S. stated that

she then needed to use the bathroom.  Id. at 337.  Gaffney volunteered to bring her because it

would be easier for him to navigate the crowd than it would be for Steven, who is blind, to do so

with his other children.  Id. at 337-38, 340.  Gaffney then brought her to a restaurant and went into

the bathroom with her.  Id. at 387-88.  After M.S. used the toilet, Gaffney pulled down his pants

and exposed his genitalia to M.S.  Id. at 388.  He then directed M.S. to touch his genitalia and she

complied.  Id. at 389.  Gaffney then proceeded to force M.S. to perform fellatio.  Id. at 396-97.  He

then warned M.S. that if she talked about the incident, he would "kill [her]."  Id. at 398.  Gaffney

then escorted M.S. back to her family, who was still watching the parade.  Id.  When M.S. returned

from the bathroom, she seemed "almost like she was exhausted.  She just didn't speak."  Id. at

339.

On October 18, 2003, M.S. told her mother what Gaffney had done to her during the

parade, and her mother called the police.  Id. at 340.  On October 28, 2003, M.S. met with

Detective Henry Burns ("Burns") of the Syracuse police department and discussed the incident

---

[1] Under New York law:

> [t]he identity of any victim of a sex offense ... shall be confidential.  No
> ... court file or other documents, in the custody or possession of any
> public officer or employee, which identifies such a victim shall be made
> available for public inspection.

New York's Civil Rights Law § 50-b.  In light of this provision, the Court will refer to the victim by her
initials so as to ensure her privacy.  See Lucidore v. New York State Div. of Parole, 209 F.3d 107, 109
n.4 (2d Cir. 2000) (substantial compliance with this statute is obtained where the court refers to the
victim by use of initials).

involving Gaffney.  Id. at 473-74.  At that time, she told Burns that the incident occurred at a downtown restaurant that had a brick exterior with red inside, which had a restroom that had a picture of a male and a female on the door.  Id. at 474.  Burns canvassed the parade route with M.S. and her mother looking for the restaurant at which the incident took place, and M.S. initially identified a Japanese restaurant as the location.  Id. at  476.  The police eventually discovered, however, that the restaurant was not open on St. Patrick's Day.  Id. at 477.

On May 24, 2004, M.S. and her mother met with Investigator Carol Sacco ("Sacco") of the Onondaga County District Attorney's Office and they proceeded to search the area of the parade route to locate the crime scene.  Id. at 509-11.  At that time, M.S. told Sacco that the restaurant they were looking for had a descending staircase.  Id. at 511.  Sacco then remembered that a nearby restaurant called the Manhattan Downtown Club had such a staircase.  Id.  She escorted M.S. to the restaurant, and when she entered it, she immediately stated, "[t]his is it."  Id. at 511-12.  M.S. then led Sacco down the stairs, through the hallway, where there was an overhead sign with a picture of a man and woman.  Id. at 512.  M.S. then opened the door to the women's bathroom and exclaimed, "[t]his is it," identifying it as the place where Gaffney had sexually assaulted her.  Id. at 512-13.

As a result of the foregoing, an Onondaga County grand jury returned an indictment against Gaffney.  See Indictment No. 2004-0102-1 ("Indictment").  In the Indictment, Gaffney was charged with Sodomy in the First Degree, contrary to N.Y. Penal Law § 130.50(3); Sexual Abuse in the First Degree, in violation of  N.Y. Penal Law § 130.65(3) and Endangering the Welfare of a Child, contrary to N.Y. Penal Law § 260.10(1).  Id.

On June 7, 2004, Gaffney's jury trial on the foregoing charges commenced in Onondaga

County Court with County Court Judge Anthony F. Aloi presiding.  At the conclusion of that trial, the jury convicted Gaffney of all charges.  See Trial Tr. at 614-15.

On June 23, 2004, Petitioner, through his trial attorney, filed a motion pursuant to New York Criminal Procedure Law ("CPL"), § 330.30, to set aside the verdict ("CPL 330 Motion").  In the CPL 330 Motion, Gaffney claimed that:  i) the testimony of the victim was not sufficiently corroborated as required by N.Y. Penal Law § 130.16; ii) evidence of M.S.'s history of sexual molestation was improperly excluded at trial; iii) Judge Aloi improperly excluded evidence of Steven's prior sexual abuse of M.S.; iv) the County Court improperly precluded the defense from using M.S.'s psychological records for impeachment purposes; and v) Steven's refusal to answer questions posed to him on cross-examination constituted an infringement on Gaffney's right to confront his accuser and prejudiced the defense.  See CPL § 330 Motion.

On June 24, 2004, just prior to Gaffney's sentencing, Judge Aloi issued an oral decision in which he denied the CPL 330 Motion.  See Transcript of Sentencing of Daniel Gaffney (6/24/04) at 4-11.  Judge Aloi then sentenced Gaffney to a determinate prison term of twenty five years on the first degree sodomy conviction, a consecutive, determinate prison term of seven years on the sexual abuse conviction, and a concurrent one year term on the child endangerment conviction.  Id. at 16-17.  Those sentences were ordered by Judge Aloi to run consecutive to an unrelated sentence Gaffney was then serving for a prior felony conviction.  Id. at 17.

Gaffney filed an appeal of his conviction and sentence with the New York State Supreme Court Appellate Division, Fourth Department.  In that appeal, Gaffney's appellate counsel, Philip Rothschild, Esq., alleged that:  i) the court illegally imposed consecutive sentences on Gaffney regarding the sodomy and sexual abuse convictions; ii) the verdict was against the weight of the

evidence; iii) the County Court improperly precluded Gaffney from using the victim's psychiatric records to impeach her testimony; and iv) Gaffney received the ineffective assistance of trial counsel.  <u>See</u> App. Br.  That appeal was opposed by the Onondaga County District Attorney, and on June 9, 2006, the Fourth Department unanimously affirmed the judgment of conviction.  <u>See</u> <u>People v. Gaffney</u>, 30 A.D.3d 1096 (4th Dep't 2006).  Gaffney sought leave to appeal that decision from the New York Court of Appeals, however on July 25, 2006, that court denied his application.  <u>See</u> <u>People v. Gaffney</u>, 7 N.Y.3d 789 (2006).

On February 10, 2007, Gaffney filed a *pro se* motion to vacate the judgment of conviction pursuant to CPL § 440.10 ("CPL 440 Motion").  In the CPL 440 Motion, Gaffney argued that:  i) he was denied his right to a fair trial because the prosecution changed its theory as to the location of the crime; ii) the prosecutor introduced photographs of the location of the incident, knowing that such photographs were false; iii) the County Court failed to conduct a preliminary examination regarding M.S.'s competency to testify; and iv) he was denied the effective assistance of trial counsel.  <u>See</u> CPL 440 Motion.  The District Attorney opposed that application, and on August 20, 2007, Judge Aloi denied such motion.  <u>See</u> Decision and Order of Judge Aloi (8/20/07) at 10.  Gaffney did not seek leave to appeal the denial of his CPL 440 Motion from the Appellate Division.

**B.     <u>This Action</u>**

Petitioner filed the present Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 17, 2008.  <u>See</u> Petition (Dkt. No. 1).  In his Petition, Gaffney argues:  i) the trial court illegally imposed consecutive sentences on him; ii) Judge Aloi improperly precluded defense counsel from impeaching the victim's testimony through the use of her psychiatric records; iii) he

was denied the effective assistance of trial counsel; iv) the jury's verdict was against the weight of the evidence; v) the prosecutor introduced photographs of the crime scene she knew to be "false;" vi) the District Attorney improperly changed theories as to the location of the crime; and vii) the trial court failed to conduct a preliminary examination to determine the victim's capacity to testify both at the grand jury and at trial.  Id.

The Respondent filed a response in opposition to the Petition, Dkt. No. 12, as well as a memorandum of law in opposition to the Petition.  See Resp. Mem. (Dkt. No. 11).  Additionally, the Respondent has provided the Court with various state court records, including the trial transcript, relating to Gaffney's convictions.  In opposing Gaffney's Petition, Respondent asserts that several of Gaffney's claims are procedurally barred, and that all of his claims lack merit.  See Resp. Mem.

This matter is currently before this Court for disposition.

## II.    Discussion

### A.    Procedurally Barred Claims

As noted above, Respondent claims that Petitioner is procedurally barred from pursuing some of the grounds he has asserted herein.  See Resp. Mem.  In support of this argument, Respondent contends that Gaffney has not fully exhausted the following claims in the state courts below:  i) the trial court illegally imposed consecutive sentences; ii) the verdict was against the weight of the evidence; iii) the District Attorney improperly introduced into evidence crime scene photographs she knew to be false; iv) the prosecution improperly changed theories as to the location of the crime; and v) Judge Aloi wrongfully failed to conduct a preliminary hearing regarding M.S.'s competency to testify before the grand and petit juries.  See Resp. Mem. at 15-16.

It is well-settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'" <u>Shabazz v. Artuz</u>, 336 F.3d 154, 160 (2d Cir. 2003) (quoting <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001)); <u>see also</u> <u>Hill v. Mance</u>, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." <u>Galdamez v. Keane</u>, 394 F.3d 68, 72 (2d Cir. 2005) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999)) (other citations omitted). As the Supreme Court noted in <u>O'Sullivan</u>, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." 526 U.S. at 844 (citations omitted); <u>see also</u> <u>Galdamez</u>, 394 F.3d at 72 (citation omitted).[2]

A petitioner exhausts available state remedies in the federal habeas context by: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." <u>Ramirez v. Attorney Gen.</u>, 280 F.3d 87, 94 (2d Cir. 2001) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 276-77 (1971)). A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." <u>Jones v. Vacco</u>, 126 F.3d 408, 413 (2d

---

[2] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." <u>O'Sullivan</u>, 526 U.S. at 845 (quotation and citations omitted); <u>see also</u> <u>Galdamez</u>, 394 F.3d at 72 (citation omitted).

Cir. 1997) (citation omitted); see also Berry v. Hulihan, No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); Jackson v. Senkowski, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim . . ." Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Williams v. Breslin, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing Baldwin).

The Court's review of the record confirms Respondent's claim that the theories mentioned above were not fully exhausted by Gaffney in the state courts.  Specifically, in asserting these claims in those state court challenges, neither the appellate brief filed by counsel, nor Petitioner's CPL 440 Motion, referred, in any way, to the United States Constitution, or any federal statute or case.  See App. Br.; CPL 440 Motion.

When claims have not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio, 269 F.3d at 90 (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997)); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000).[3]

Petitioner cannot now pursue any of the above theories through another appeal to the Fourth Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  See Aparicio, 269 F.3d at 91 (citations omitted).  Moreover, Gaffney could not now properly raise these theories in another CPL § 440 motion filed with the County Court because he

---

[3] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits.  Aparicio, 269 F.3d at 91 n.5; Cuadrado v. Stinson, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

could have raised these arguments – all of which are based on the record – in the CPL motion he previously filed with that court.  See, e.g., Williams v. Burge, No. 02-CV-0695, 2005 WL 2179423, at *14 (N.D.N.Y. Aug. 15, 2005).  Therefore, all of the above claims are "deemed exhausted" for purposes of Gaffney's habeas application.  St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are "deemed exhausted," they are procedurally defaulted.  See Aparicio, 269 F.3d at 90 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Ciochenda v. Artus, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the substance of procedurally forfeited claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[4] Dixon, 293 F.3d at 80-81 (citing Coleman); St. Helen, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)) (other citations omitted); see generally Murray v. Carrier, 477 U.S. 478, 495-96 (1986); King v. Greiner, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse

---

[4] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

the default and prejudice, or actual innocence"); <u>Lora v. West</u>, No. 04Civ.1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted).

In claiming that he has demonstrated cause for the defaults referenced above, Gaffney argues that:  i) the *pro se* handbook provided by this District to inmates fails to inform prospective litigants as to what is required to fully exhaust federal habeas claims; ii) the booklet provided to Gaffney by Prisoner's Legal Services ("PLS") regarding the filing of his CPL 440 Motion did not properly advise Gaffney of the exhaustion requirement; and iii) his appellate counsel wrongfully failed to assert his appellate claims in federal terms.  <u>See</u> Traverse at 1.

Any argument that Gaffney would have framed his procedurally defaulted claims in federal terms, but that he consciously refrained from asserting such claims in that manner because manuals provided to him by either this Court or PLS did not inform him of the required procedures is specious.  Instead, it is apparent that Gaffney now claims that he was personally unaware of the legal requirements regarding exhaustion, and that the manuals that were provided to assist him in preparing his legal materials failed to specifically advise him of the precise procedures he was required to follow to fully exhaust his claims.  Traverse at 1.  However, "'[t]he mere failure of a petitioner to be aware of a particular area of the law ... does not constitute cause.'"  <u>Fink v. Bennett</u>, 514 F.Supp.2d 383, 389 (N.D.N.Y. 2007) (quoting <u>Quintana v. McCoy</u>, No. 03-CV-5747, 2006 WL 300470, at *4 n. 7 (S.D.N.Y.  Feb. 6, 2006)) (internal quotation and citation omitted); <u>see</u> <u>also</u> <u>Plater v. Superintendent, Cayuga Correctional Facility</u>, No. 08-CV-380, 2009 WL 529545, at *5 (N.D.N.Y. Mar. 2, 2009) (citations omitted).  This Court therefore finds that Petitioner's argument that the failure of the above-referenced manuals to specifically inform Gaffney of all the steps he was required to undertake to fully exhaust his unexhausted claims constitutes legal cause

excusing his procedural default is without merit.

Gaffney also claims that his appellate counsel wrongfully failed to assert the unexhausted claims in federal terms, and improperly assured him that "the state remedies have been exhausted." Traverse at 1.  However, Gaffney has apparently never filed a *coram nobis* application challenging appellate counsel's performance in state court.[5]  See Petition at ¶ 9(b) (Petitioner indicating that the only collateral challenge filed by him was the CPL 440 Motion discussed above).  A petitioner may not argue that an attorney's ineffective assistance constituted "cause" for a default when that ineffective assistance claim itself has never been asserted by the petitioner in the state courts. Reyes, 118 F.3d at 140 (citation omitted); see also Perez v. Greiner, No. 02 CIV. 1436, 2003 WL 22427759, at *7 (S.D.N.Y. Oct. 23, 2003); Carey v. Supt., 99-CV-0821, slip op. at 5 (N.D.N.Y. Sept. 29, 2003) (citing Murray).

Since Gaffney has not established cause for his failure to fully exhaust these theories,[6] this Court need not decide whether he suffered prejudice, because federal habeas relief is unavailable as to procedurally barred claims under this limited exception permitting review of procedurally forfeited claims unless both cause and prejudice are demonstrated.  Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); D'Alessandro v. Fischer, No. 01 CIV 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing Stepney); Lutes v.

---

[5] A coram nobis application is the means by which an individual may properly bring a claim alleging ineffective assistance of appellate counsel in New York State.  See People v. Bachert, 69 N.Y.2d 593, 595-96 (1987).

[6] Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies.  Fink, 514 F.Supp.2d at 388 (collecting cases).

Ricks, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005); Pou v. Keane, 977

F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

The finding that Gaffney has failed to establish cause for his default does not necessarily

preclude this Court from considering his procedurally forfeited claims, however, because, as noted

above, a federal court may nonetheless properly invoke habeas review as to such claims if the

court is convinced that a fundamental miscarriage of justice would occur if the defaulted claims

were not considered by the federal court.  On this issue, however, the Second Circuit has noted

that:

> [T]he fundamental miscarriage of justice exception is "extremely
> rare" and should be applied only in "the extraordinary cases."
> Schlup v. Delo, 513 U.S. 298, 321-22 (1995); . . . "'[A]ctual
> innocence' means factual innocence, not mere legal insufficiency."
> Bousley[], 523 U.S. [at] 623 ....  "To establish actual innocence, [a]
> petitioner must demonstrate that, 'in light of all the evidence, 'it is
> more likely than not that no reasonable juror would have convicted
> him.' "  Id. (citing Schlup, 513 U.S. [at] 327-28.

Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003) (some internal citations and quotation marks

omitted); see also D'Alessandro, 2005 WL 3159674, at *8; Marengo v. Conway, 342 F. Supp. 2d

222, 228 (S.D.N.Y. 2004).

This Court has reviewed the record and satisfied that Gaffney is not innocent of any of the

charges of which he was found guilty.  Since he has failed to make a credible claim of actual

innocence in this matter, he cannot now seek safe harbor from the procedural denial of these

grounds based upon a claim of actual innocence.  The Court therefore denies, as procedurally

forfeited, Gaffney's first, fourth, fifth, sixth and seventh grounds for relief.

**B.**      **Remaining Claims**

Although this Court has found that Gaffney has procedurally defaulted on the claims noted above, he has also alleged in this action that: i) the trial court improperly precluded defense counsel from impeaching the victim with her psychiatric records; and ii) Gaffney received the ineffective assistance of trial counsel.[7] See Petition.

### 1.   Standard of Review

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in Jones v. West that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

555 F.3d 90, 96 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403

---

[7] Respondent alleges that certain of Gaffney's theories alleging ineffective assistance of trial counsel are unexhausted because he never sought leave to appeal the order that denied his CPL 440 Motion from the Appellate Division.  See Resp. Mem. at 16.  However, in Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990), the Second Circuit squarely held that even where, as here, the statutory time limit for seeking leave to appeal the denial of a CPL motion has passed, federal courts "have no authority to declare as a matter of state law that an appeal from the denial of [a] Section 440.10 motion is unavailable."  Pesina, 913 F.2d at 54.  Pesina accordingly stands for the proposition that district courts must "treat as unexhausted" federal habeas claims initially brought in a CPL § 440 motion where the petitioner failed to seek leave to appeal from the Appellate Division, rather than "deem" such claims exhausted.  See Priester v. Senkowski, No. 02 CIV.3441, 2002 WL 1448303, at * 7 (S.D.N.Y. July 3, 2002) (citing Pesina); Quintana, 2006 WL 300470, at *5 (noting that although the Second Circuit's holding in Pesina "may well be on shaky ground, it cannot be nullified by this Court").

F.3d 57, 66 (2d Cir. 2005); <u>Miranda v. Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003); <u>Boyette v.</u>

<u>LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this

standard, the Second Circuit has noted that:

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did.  [<u>Williams v. Taylor</u>, 529 U.S. 362,]
> at 405-06 [2000]; <u>Loliscio v. Goord</u>, 263 F.3d 178, 184 (2d Cir.
> 2001).... [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it.  <u>Williams</u>, 529 U.S. at 413.

<u>Thibodeau v. Portuondo</u>, 486 F.3d 61, 65 (2d Cir. 2007); <u>see also</u> <u>Williams v. Artuz</u>, 237 F.3d 147,

152 (2d Cir. 2001) (citing <u>Francis S. v. Stone</u>, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable." <u>Williams</u>, 529 U.S. at 409; <u>see also</u> <u>Sellan v.</u>

<u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).  "While the precise method for distinguishing

objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is

well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means

that petitioner must identify some increment of incorrectness beyond error in order to obtain

habeas relief." <u>Sorto v. Herbert</u>, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and

alteration omitted).  That increment, however, "need not be great; otherwise habeas relief would be

limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Overton</u>

<u>v. Newton</u>, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks omitted).

**2.**      **Substance of Gaffney's Remaining Claims**

**a.**      **Right of Confrontation**

In this ground, Gaffney argues that Judge Aloi wrongfully precluded defense counsel from questioning the victim about her psychiatric history, and that he was therefore prevented from effectively cross-examining – and confronting – that witness.  See Petition; see also App. Br. at 46 (counsel arguing that Gaffney's right of confrontation was violated by the County Court).

**i.**      **Clearly Established Supreme Court Precedent**

The Confrontation Clause of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."  U.S. Const., Amend. VI; see Kentucky v. Stincer, 482 U.S. 730, 736 (1987).  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted).  However, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam).  Significantly, the trial court retains "wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things ... interrogation that is ... only marginally relevant."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

**ii.**      **Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

In rejecting this claim in the context of Gaffney's direct appeal, the Appellate Division held that:

15

County Court properly limited defense counsel's cross-examination
of the victim concerning her psychiatric history inasmuch as there is
no indication in her psychiatric records that her capacity to perceive
and recall events was impaired by a psychiatric condition (see
People v. Middlebrooks, 300 A.D.2d 1142, 1143, 752 N.Y.S.2d 759,
lv. denied 99 N.Y.2d 630, 760 N.Y.S.2d 112, 790 N.E.2d 286).

Gaffney, 30 A.D.3d at 1096.  In light of AEDPA, this Court must ascertain whether the Appellate

Division's rejection of this claim is either contrary to, or reflects an unreasonable application of,

the above-referenced Supreme Court precedent.

After defense counsel suggested that he might wish to cross-examine the victim regarding

her prior psychiatric history, the prosecution noted that it would "object strenuously to just random

questioning of any witness about their psychiatric records."  Trial Tr. at 325.  Judge Aloi then

acknowledged that "the mental state of any witness is certainly subject to, in this Court's opinion,

subject to cross-examination," but noted that he would not allow defense counsel "to try her

psychiatric history here in this courtroom."  Id.

It has been observed that a trial court should preclude a party from inquiring into a

witness's psychiatric history when there is no reasonable connection between the psychiatric

history of the individual and the facts germane to the criminal proceeding.  See United States v.

Sasso, 59 F.3d 341, 347-48 (2d Cir. 1995); United States v. Friedman, 854 F. 2d 535, 571 (2d Cir.

1988).  In providing guidance to courts as to what factors should be considered in determining

whether to allow the psychiatric history of a witness into evidence, the Second Circuit has opined

that:

[i]n assessing the probative value of such evidence, the court should
consider such factors as the nature of the psychological problem, the
temporal recency or remoteness of the history, and whether the
witness suffered from the problem at the time of the events to which

16

> she is to testify, so that it may have affected her ability to perceive or
> to recall events or to testify accurately.

Sasso, 59 F.3d at 347-48 (internal quotation marks and citations omitted);[8] see Middlebrooks v. Conway, No. 05-CV-0004, 2009 WL 899668, at *6-7 (W.D.N.Y. Mar. 30, 2009) (no confrontation clause violation where trial court prevented inquiry into claimed psychological disorder of witness).  In discussing the deference that reviewing courts should afford the decisions of trial courts regarding the admission of such evidence, the Second Circuit has noted that, because "the trial judge is in the best position to weigh competing interests in deciding whether or not to admit certain evidence . . . [a]bsent an abuse of discretion, the decision of the trial judge to admit or reject evidence will not be overturned."  United States v. Sun Myung Moon, 718 F. 2d 1210, 1232 (2d Cir. 1983).

Petitioner has wholly failed to demonstrate that Judge Aloi's ruling limiting the manner in which defense counsel could utilize the victim's psychiatric history violated Gaffney's right to cross-examine that witness, or otherwise deprived Petitioner of his right to a fair trial.[9]  Specifically, he has wholly failed to establish that M.S.'s psychiatric history impeded, in any way, her ability to perceive or recall events, or otherwise testify truthfully.  Petitioner is therefore not

---

[8] The Second Circuit has noted that a witness's privacy interest is "an important factor" that is to be considered in determining whether to admit a witness' psychiatric history or diagnosis into evidence.  In Re Doe v. Diamond, 964 F. 2d 1325, 1329 (2d Cir. 1992).

[9] To the extent Petitioner now argues that the victim was not competent to testify at trial, see Petition, this Court notes that Gaffney never contested M.S.'s competence to testify at trial in the criminal matter below, but instead claimed that her psychiatric records were relevant to challenging her credibility.  See Trial Tr. at 322.  Judge Aloi therefore had no reason to suspect that the victim was incompetent to testify at Gaffney's trial.  See Snitzel v. Murry, 371 F. Supp. 2d 295, 303 (W.D.N.Y. 2004) (rejecting petitioner's challenge to a child witness' competency because petitioner "failed to present evidence that the complainant was suffering from a mental defect that would render her incompetent to give sworn testimony against him").

entitled to habeas relief on this claim.

### b.      Ineffective Assistance of Counsel

In his third ground for relief, Gaffney argues that he received the ineffective assistance of
trial counsel.  See Petition.

### i.      Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal
prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his
defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance
of counsel, a habeas petitioner must typically show both:  a) that counsel's representation fell
below an objective standard of reasonableness, measured in the light of the prevailing professional
norms; and b) resulting prejudice, that is, a reasonable probability that, but for counsel's
unprofessional performance, the outcome of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521 (2003) ("the
legal principles that govern claims of ineffective assistance of counsel" were established by the
Supreme Court in Strickland).

### ii.      Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

Petitioner asserts numerous theories in support of his claim that he received the ineffective
assistance of trial counsel.  Specifically, he argues that such counsel:  a) used unfairly prejudicial
evidence against Gaffney; b) failed to challenge the victim's competence to testify; c) did not
utilize the victim's psychiatric records to impeach the victim; d) did not object to the prosecutor's
use of leading questions; e) failed to move to suppress the introduction of certain photographs into

18

evidence; f) failed to subpoena additional defense witnesses; g) failed to "ask for jury instructions"; h) failed to call an expert witness; i) did not adequately prepare for trial; and j) pursued a reckless and unnecessary trial strategy. <u>See generally</u> Petition. Gaffney further asserts that the cumulative effect of the foregoing errors deprived him of his right to the effective assistance of counsel. <u>Id.</u>

Gaffney's initial theory in support this claim relates to trial counsel's reference in his opening statement to the fact that Gaffney had previously pleaded guilty to committing sexual crimes. <u>See</u> Petition; <u>see also</u> Trial Tr. at 309-10. In a related theory, Gaffney argues that his counsel pursued a "reckless and unnecessary" trial strategy. <u>See</u> Petition. However, as the Appellate Division noted in rejecting these claims, the challenged tactics of trial counsel were strategic in nature; they supported Gaffney's defense that he was "willing to plead guilty when he was in fact guilty," but unwilling to do so when the charges were false. <u>Gaffney</u>, 30 A.D.3d at 1096.[10]

With respect to Petitioner's claim regarding counsel's failure to challenge the victim's competence to testify at trial, the Court notes that Gaffney did not provide to the state courts – and has not submitted to this Court – evidence which demonstrates that M.S. was not competent to testify under oath as to the sexual acts alleged in the Indictment. Thus, it is apparent that Gaffney now invites this Court to speculate that the victim was not competent to testify against him, and that counsel was therefore ineffective in failing to contest her competence to testify at trial. However, courts cannot grant habeas relief based upon unsubstantiated conclusions, opinions or

---

[10] Additionally, since one of those prior convictions involved a family member of M.S., defense counsel may well have been "attempting to establish that members of the victim's family had a motive to lie when testifying against defendant at trial." <u>Gaffney</u>, 30 A.D.3d at 1096.

speculation.  Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas

relief on the basis of little more than speculation with slight support"); see Osinoiki v. Riley, CV-

90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on

speculation "are inadequate to satisfy petitioner's burden") (citing Machibroda v. United States,

368 U.S. 487, 495 (1962) and Dory v. Commissioner of Correction, 865 F.2d 44, 45 (2d Cir. 1989)

(per curiam)) (other citations omitted).  This theory is therefore without substance.

     Next, in light of the County Court's ruling, in which that court advised defense counsel that

it was inclined to preclude counsel from questioning the victim about her prior psychiatric history,

see Trial Tr. at 325, the Court concurs with the Appellate Division that defense counsel's failure to

refer to those records on cross-examination did not amount to ineffective assistance.  Gaffney, 30

A.D.3d at 1096.

     As to Gaffney's claim that counsel did not object to the prosecutor's use of leading

questions during her direct examination of the victim, the Court notes that Judge Aloi suggested

that any objection filed by counsel to those questions would have been overruled by the trial court.

See August, 2007 Decision at 8 (Judge Aloi noting that County Court has discretion to allow

prosecutor to ask leading questions of witnesses where appropriate).  It was therefore not

objectively unreasonable for counsel to refrain from lodging an objection to the manner in which

the District Attorney questioned the victim.  Regardless, Petitioner has not demonstrated that the

outcome of his trial would have been different had defense counsel objected to the format of those

questions.

     Next, this Court finds that defense counsel's failure to challenge the admissibility of the

photographs regarding the alleged crime scene was not suggestive of ineffective assistance, but

instead, as the trial court noted, "clearly a strategic move to demonstrate inconsistencies in the

victim's account of where the incident occurred and to attack her credibility as to what occurred."

August, 2007 Decision at 8.

With respect to Petitioner's claim that defense counsel wrongfully failed to subpoena

defense witnesses or call an expert witness to testify on Gaffney's behalf, the Court notes that it is

well-settled that "[t]he decision of whether to call or bypass a particular witness is a question of

trial strategy which courts will practically never second-guess ...."  Brown v. Conway,  No.

05CV0839, 2009 WL 604906, at *6 (W.D.N.Y. Mar. 9, 2009) (citations and internal quotations

omitted).  Moreover, a petitioner's "conclusory allegations about the testimony of uncalled

witnesses are insufficient to demonstrate prejudice" in this context.  Edmonds v. Purdy, No. 08

CIV. 8808, 2009 WL 483189, at *19 (S.D.N.Y. Feb. 26, 2009).  Gaffney failed to demonstrate in

the state courts, and has similarly not established in this habeas action, that individuals who would

have provided testimony favorable to Gaffney were not called by defense counsel at the criminal

trial below due to counsel's ineffective assistance.

Next, Gaffney has wholly failed to explain how the failure of his trial counsel to request

unspecified "jury instructions," see Petition, was either objectively unreasonable conduct or

prejudicial to Gaffney.  He is therefore not entitled to habeas relief on this speculative claim.

Considering next Petitioner's claim that his trial counsel did not adequately prepare for

trial, see Petition, the Court notes that such claim is refuted by the County Court's observation that

defense counsel "exhibited a thorough grasp of the factual issues and knowledge of the applicable

law" relating to the criminal matter involving Gaffney.  See August, 2007 Decision at 8.  Thus, as

with Petitioner's claims regarding counsel's failure to challenge the victim's competence to testify

21

or to request unspecified jury instructions, this aspect of Gaffney's ineffectiveness claim is rooted in speculation and entirely without merit.

Finally, the Court finds that, even viewing the numerous theories upon which Gaffney rests his ineffective assistance claims cumulatively, he has not established that he was deprived of his right to the effective assistance of counsel in the criminal matter below.  This claim therefore does not afford Petitioner a basis for federal habeas intervention.  See e.g., Parker v. Duncan, No. 9:03CV0759, 2007 WL 2071745, at *13 (N.D.N.Y. July 17, 2007) (citations omitted); Nicholas v. Smith, No. 02 CV 6411, 2007 WL 1213417, at *16 (E.D.N.Y. Apr. 24, 2007).

In sum, this Court finds that the state court decisions denying the various theories offered by Gaffney in support of his ineffective assistance of trial counsel claims, see Gaffney, 30 A.D.3d at 1096-97; August, 2007 Decision at 10; are neither contrary to, nor represent an unreasonable application of Strickland and its progeny.  The Court therefore denies this ground for relief.

## III.   Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[11]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).

---

[11] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed. R. App. P. 22(b).

Since Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**III.** **Conclusion**

Accordingly, it is hereby

**ORDERED**, that Gaffney's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Order upon the parties to this action; and it is further

**ORDERED**, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party); and it further

**ORDERED**, that a Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

DATED:       June 17, 2009
                   Albany, New York

Lawrence E. Kahn
U.S. District Judge

23